## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| BRUCE RUSH, as a participant in and on behalf of the Segerdahl Corporation employee stock ownership plan, and on behalf of a class of all others who are similarly situated, | |
| Plaintiff, | Case No.: 1:19-cv-00738 |
| v. | |
| GREATBANC TRUST COMPANY; MARY LEE SCHNEIDER; RICHARD JOUTRAS; RODNEY GOLDSTEIN; PETER MASON; ROBERT CRONIN; JOHN DOE DEFENDANTS 1-10; and SEGERDAHL CORP. (d/b/a SG360), | Judge Andrea R. Wood<br>Magistrate Judge Susan E. Cox |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL CONTINUED RULE 30(b)(6) DEPOSITION OF DEFENDANT GREATBANC**

## INTRODUCTION

Plaintiff respectfully submits this Memorandum in Support of Plaintiff's Motion to Compel Continued Rule 30(b)(6) Deposition of Defendant GreatBanc Trust Company ("GreatBanc") pursuant to Federal Rules of Civil Procedure Rules 30 and 37.

On November 17, 2020, Plaintiff took the joint deposition of Defendant GreatBanc under Federal Rule of Civil Procedure 30(b)(6) and its Chief Executive Officer and President, James Staruck individually. Even prior to the deposition, Plaintiff's counsel identified the GreatBanc deposition as potentially needing more than seven hours, given the amount of material to cover. Unfortunately, Plaintiff's ability to productively use even the default seven hours of deposition time was significantly hindered by GreatBanc and its counsel. GreatBanc was entirely unprepared for its 30(b)(6) deposition. GreatBanc's 30(b)(6) designee testified dozens of times that he could not recall basic information about the ESOP transaction and GreatBanc's decision to approve it. In addition, Defense counsel interrupted the deposition repeatedly, causing Plaintiff to lose more than an hour of deposition time.

Plaintiff reserved the right to call the witness back on the record for those reasons, and later requested that GreatBanc allow the deposition to be re-opened, but GreatBanc refused. Accordingly, following meet and confer, Plaintiff now seeks to compel Defendant GreatBanc to prepare a Rule 30(b)(6) witness on all deposition topics noticed by Plaintiff in Exhibit C to the Declaration of James A. Bloom ("Bloom Decl."), and to compel the continuation of GreatBanc's 30(b)(6) deposition for a period of three hours (not including time for cross-examination), pursuant to Federal Rules of Civil Procedure Rules 30 and 37.

## LOCAL RULE 37.2 STATEMENT

Plaintiff's counsel hereby states Plaintiff's counsel has conferred in good faith with counsel

for GreatBanc by telephone and email in an attempt to resolve the issues presented in this motion, but have been unable to reach an accord. GreatBanc refuses to allow additional time to continue a 30(b)(6) deposition. *See* Bloom Decl. ¶ 3. A record of Plaintiff's communications with GreatBanc relating to these issues is set out in the Declaration of James Bloom, filed herewith, and discussed below. In particular, to avoid this motion, Plaintiff proposed that if GreatBanc agreed not to change any of its deposition responses at trial (including the numerous "don't recall" responses), Plaintiff would agree to forgo further deposition testimony of GreatBanc. Defendants insisted that Plaintiff provide Defendants with an itemized list of all the questions where GreatBanc could not recall, which Plaintiff was unwilling to do, including because GreatBanc is already in possession of the deposition transcript with the questions at issue. *Id.* at ¶¶ 13-19.

## BACKGROUND

Defendants were the ERISA fiduciaries of the Segerdahl Corp. Employee Stock Ownership Plan (the "ESOP"), which was the 100% owner of the Segerdahl Corp. ("Segerdahl"). Defendant GreatBanc was the trustee of the ESOP. On December 7, 2016, Defendants caused the ESOP to sell its entire stake in Segerdahl (the "ESOP Buyout") to a consortium of buyers led by ICV Partners, LLC, a private equity firm, and which included, among others, Segerdahl's CEO— Defendant Schneider (who also served as the ESOP's named fiduciary), and Segerdahl's CFO. Defendant GreatBanc was responsible for the final review and approval of the sale.

Plaintiff Bruce Rush, a participant in the ESOP, alleges that Defendants, including GreatBanc, breached their fiduciary duties of prudence and loyalty during the ESOP Buyout, including by failing to take reasonable steps to maximize the value received by the ESOP. In particular, Plaintiff alleges that Defendants failed to market the company to competitors or other strategic purchasers (which Defendants now admit), even though, as Defendants themselves

discussed internally, strategic purchasers typically pay more than investment buyers. Plaintiff also alleges that Defendants failed to obtain any value for the ESOP for a pending $25 million sale-leaseback transaction; for the tax election under IRC § 338(h)(10), that had a present value at the time of the sale, estimated by Defendants, of more than $40 million; and for the Wolf Road Fraud settlement.  Plaintiff also claims that Defendant GreatBanc engaged in a transaction prohibited by ERISA Sections 1106(a)(1)(A) & (D).

On September 24, 2020, Plaintiff noticed the deposition of Defendant GreatBanc, attaching a list of 30(b)(6) deposition topics.  Bloom Decl. ¶ 4.  The parties exchanged emails regarding the deposition and then held a phone call on October 9, 2020 at which time Plaintiff expressed that he would likely need more than seven hours for the deposition and reserved his right to seek additional time beyond the seven hours.  *Id*. at ¶ 5.  Defense counsel confirmed this reservation in an email on October 12, 2020, stating, "On the one day/7 hour limit, the parties will endeavor to work cooperatively to have the deposition completed in that period, with Plaintiff reserving the right to seek more time and Defendants reserving their right to object on same."  Defense counsel also discussed limiting the scope on certain deposition topics numbers 4, 28, 35, 36, and 37. *Id.* at ¶ 6.

Plaintiff responded on October 13, 2020, stating, "We will do our best to keep that deposition to seven hours, but we have a lot of ground to cover."  Plaintiff further noted that "As to Mr. Staruck's personal knowledge before 2014, as GreatBanc's 30(b)(6) designee, GreatBanc has an obligation to ensure that Staruck is provided with sufficient information to answer questions about the topics described in the notice. We appreciate you bringing the matter to our attention, but reserve our rights to the extent Mr. Staruck is not adequately prepared to answer." *Id.* at ¶ 7.

Plaintiff sent a revised notice on November 12, 2020 requiring that the witness also have certain technical equipment to ensure a productive deposition.  *Id.* at ¶ 8.  The revised notice,

including deposition topics is attached as Exhibit C to the Bloom Declaration.

On November 17, 2020, Plaintiff took the joint deposition of Defendant GreatBanc under Federal Rule of Civil Procedure 30(b)(6) and its Chief Executive Officer and President, James Staruck individually. Bloom Decl. ¶ 9. The deposition lasted seven hours. During this time, Mr. Staruck, in his capacity as GreatBanc's 30(b)(6) representative, responded to Plaintiff's questions with words to the effect that he did not know or did not recall the answer on almost 100 occasions. Bloom Decl. ¶ 10.

Furthermore, Defense counsel consistently made speaking objections and other inappropriate objections causing significant delays. *Id.* at ¶ 11.

As a result of the delays during the deposition caused by Defense counsel, and the inability of GreatBanc's 30(b)(6) designee to answer many questions about previously noticed topics of examination, Plaintiff's counsel noted on the record during the deposition that they would seek additional time to continue the deposition. *Id.* at ¶ 13.

The parties held a phone call on December 29, 2020 to meet and confer, during which Plaintiff offered to forego requesting additional deposition time, provided that GreatBanc would not change its answers to any deposition questions in the future, including the answers where its designee claimed not to know the answers, at trial. *Id.* ¶ 14. Defense counsel sent a confirming email on December 30, 2020 indicating they would discuss with GreatBanc. *Id.* at ¶ 15.

Plaintiff responded the next day, December 31, 2020 that he would await GreatBanc's response and reiterated that Defense counsel's speaking objections and argumentation took up nearly an hour of time at the deposition, and Mr. Staruck testified that he had no recollection of deposition topics more than 100 times. Bloom Decl. ¶ 16.

On January 4, 2020, Defense counsel responded, acknowledging that Plaintiff did not

address many of the listed 30(b)(6) topics. Defense counsel further suggested that if Plaintiff had specific questions on which he wanted GreatBanc to stipulate that the answer at the deposition would be the same at the trial, he should provide that. But Plaintiff's proposal was not limited to the questions where Mr. Staruck could not answer, and GreatBanc's proposal, which would permit GreatBanc to alter any of its deposition answers that the Parties did not specifically identify, was a non-starter from Plaintiff's perspective. Finally, Defendants were in possession of the same transcript, and could just as easily review it themselves if they were serious about engaging to avoid further deposition testimony here. Accordingly, Plaintiff did not provide this list. *Id*. at ¶ 17.

On January 28, 2021, Plaintiff followed up via email that GreatBanc had not yet indicated whether it would stipulate to its prior answers to avoid a further deposition, and that Plaintiff would accordingly prepare a motion to compel further deposition testimony. Defense Counsel responded that they were waiting for Plaintiff to provide a list of specific deposition questions for review. However, as Plaintiff explained in an email later that day, Plaintiff's proposal was as to GreatBanc's overall testimony and not limited to the particular instances where GreatBanc's representative did not know or recall the answer to questions which occurred dozens of times. Accordingly, providing a list of those instances would not be helpful. Plaintiff provided that the proposal remained and asked if GreatBanc would reconsider its position. *Id.* at ¶ 18.

On January 29, 2021, GreatBanc again demanded a list of specific questions and answers. Plaintiff believes the parties are at an impasse and has accordingly brought this motion to compel additional testimony from GreatBanc's 30(b)(6) witness. *Id.* at ¶¶ 19-20.

## LEGAL STANDARD

District courts have broad discretion in resolving discovery disputes, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018), including "significant discretion in ruling

on a motion to compel." *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) (internal citations omitted). "In ruling on motions to compel discovery, [federal] courts have consistently adopted a liberal interpretation of the discovery rules. [T]he burden rests upon the objecting party to show why a particular discovery request is improper." *Id.*

While depositions are generally limited to 7 hours, the Court "must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1)).

## ARGUMENT

### I. GreatBanc Should be Compelled to Continue the Deposition of Its Rule 30(b)(6) Representative Because GreatBanc's 30(b)(6) Designee Was Unprepared and Unable to Answer Questions on Noticed Topics of Examination

Federal Rule of Civil Procedure 30(b)(6) governs deposition notices directed to an organization. It provides that a deposition notice to an organization "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* The organization must prepare its designated individuals to "testify about information known or reasonably available to the organization." *Id.*

Federal Rule of Civil Procedure 30(b)(6) authorizes parties to name a business entity as a deponent. "Rule 30(b)(6) imposes a duty upon the corporation to designate an individual to testify who has knowledge responsive to the subjects requested in the Rule 30(b)(6) notice." *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.,* No. 13 C 50041, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013). "Additionally, the business entity must adequately prepare its corporate representative to 'answer

fully, completely, [and] unevasively, the questions posed by [the discovering party] as to the relevant subject matters.'" *Id.* (internal citation omitted). "Preparing a Rule 30(b)(6) designee may be an onerous and burdensome task, but this consequence is merely an obligation that flows from the privilege of using the corporate form to do business." *Id.*

"[Fed. R. Civ. P. 30(b)(6)] allows parties to depose a corporation through one or more representatives of the company's choice, and the 'persons designated must testify about information known or reasonably available to the organization." *Sara Lee Corp. v. Kraft Foods Inc.,* 276 F.R.D. 500, 502–03 (N.D. Ill. 2011). "This procedure alleviates a number of problems inherent to discovering information from business entities. It curbs the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." *Id.* (citations omitted).

In *Sprint Sols., Inc. v. iCell Guru, Inc.,* 310 F.R.D. 563 (N.D. Ill. 2015), the Court found that because the 30(b)(6) designated witness was unable to answer questions regarding the topics noticed for deposition, the organization to which the 30(b)(6) notice was directed was "required to present a fully prepared Rule 30(b)(6) representative on these topics for deposition again." *Id.* at 569. Similarly here, Mr. Staruck consistently was unable to answer questions regarding topics that Plaintiff noticed for deposition. Below is a just a sample of deposition testimony illustrating Mr. Staruck's inability to answer basic questions on the noticed topics:[1]

- Topic 15: GreatBanc's knowledge of the timing of when it became aware of, and the status and terms of negotiations related to the sale-leaseback of Segerdahl's real estate up to the time of the ESOP Buyout.

   Q. Were you aware at the time of the November 29th, 2016, fiduciary committee meeting that Segerdahl had, in fact, already executed a letter of intent with a potential buyer, a potential counterparty for the sale-leaseback transaction?

---

[1] A more complete description of testimony in which Mr. Staruck could not answer questions is attached as Exhibit E to the Bloom Declaration.

A. I don't recall if I was aware of that at the time of this meeting or not. (Bloom Decl., Ex. D, 233:03-233:09).

Q. Were you aware that Segerdahl had identified two bidders on the sale-leaseback transaction that could close by the end of the year, by the time the November 29th, 2016, fiduciary committee meeting?
MR. RACHAL: Object to form.
A. I don't recall if I was aware or not. (*Id.* at 236:01-236:07).

Q. And is it your -- was it your opinion at the time that if you included that, the sale-leaseback would have been a net negative to the valuation from the ESOP's perspective?
MR. RACHAL: Same objections.
A. I don't know what it would have been. We'd have to do the math.
Q. So you didn't do the math at the time?
A. I don't recall seeing the math.
Q. Did you ever ask management whether they've done the math?
A. I don't recall asking that question. (*Id.* at 238:12-238:25).

Q. Did you ask Stout Risius whether it had conducted an independent financial analysis of the sale-leaseback transaction?
A. I don't recall. (*Id.* at 239:24-240:03).

Q. Were you aware that the bids had come in on the sale-leaseback were in the $25 million range?
MR. RACHAL: I'll object to form.
A. I don't recall whether I was aware of that. (*Id.* at 240:04-240:07).

Q. Is it GreatBanc's ordinary practice to just ignore the value of a potential $25 million sale-leaseback that's closing at the same time as an ESOP sale?
MR. RACHAL: Same objection to form.
A. Was it closing at the same time?
Q. Was it not?
MR. RACHAL: Same objection.
A. I don't know. (*Id.* at 240:16-240:24).

Q. Can you recall one way or the other any analysis being performed about the value of the sale-leaseback that you were aware of prior to the ESOP sale in 2016?
MR. RACHAL: Object to form.
A. I can't recall.
Q. Did you ever ask to see that analysis? Did you ever ask anyone if it had been done?
A. I can't recall whether I asked or not. (*Id.* at 241:19-242:04).

Q. So you don't know whether -- as you sit here now, you don't know whether the letter of intent was, in fact, signed at that time in 2016, do you?
A. Are you asking me to put myself back into what I knew in 2016?
Q. Yes.
A. I do not know. (*Id.* at 246:3-246:10).

## II.     GreatBanc Should be Compelled to Continue the Deposition of Its Rule 30(b)(6) Representative Because GreatBanc's Counsel Caused Unnecessary Disruption and Delay

Federal Rule of Civil Procedure 30(c)(2) sets forth the proper form of objections during depositions: "An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner."

"Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)." *Specht v. Google, Inc.,* 268 F.R.D. 596, 598 (N.D. Ill. 2010) (internal citations omitted).  In *Specht v. Google*, the Court found that the plaintiff's attorney made "extensive, argumentative speaking objections" during a deposition noticed by the defendant. *Id.* at 599.  As a result, the Court granted the defendant's motion to compel a second deposition of the witness up to seven hours, and ordered that all costs and reasonable attorneys' fees for the second deposition to be paid by the plaintiff. *Id.* at 602-603.

Similarly here, GreatBanc's counsel made "extensive, argumentative speaking objections" during the deposition of GreatBanc's 30(b)(6) witness, which often also resulted in coaching the witness.

The exchange set forth next as an example requires some background because of the serious unfounded accusation by Defendants' counsel that Plaintiff's counsel misstated facts in the record. Plaintiff's counsel attempted to ask Mr. Staruck about Deposition Exhibit 38, the Stout Risius Ross ("SRR") fairness opinion that GreatBanc relied on in approving the sale of the ESOP.  More

specifically, Plaintiff's counsel sought to ask the witness questions about the "Transaction Overview" comparing various acquisition proposals, including one from Wynnchurch Capital. The fairness opinion indicated Wynnchurch's proposal was in the range of $270-293 million, which at the low-end of the range was higher than the price the ESOP sold for. As seen below, Plaintiff's counsel's questions were obstructed with multiple speaking objections and accusations by Defense counsel. Apparently, Defense counsel believed questions about Wynnchurch's interest in the ESOP were out-of-bounds, because months after Plaintiff's case was filed, Wynnchurch submitted an affidavit alleging that *it* had made a decision not to go forward with the purchase of the ESOP. The allegations reflected in the affidavit are nowhere mentioned in SRR's fairness opinion. Bloom Decl. ¶ 12. It was completely appropriate for Plaintiff's counsel to ask about the opinion and the facts in the opinion regarding Wynnchurch, especially to the extent those facts are contrary to WynnChurch's affidavit. If Defense counsel wished to ask Mr. Staruck about whether he knew Wynnchurch to no longer pursue the ESOP purchase prior to the time GreatBanc made its decision, he could have done that on cross-examination of the witness rather than in the following inappropriate pattern of objection and ill-conceived accusations.

> Q. Below Wynnchurch is says firm value. Do you see that?
> A. Sure, I do.
> Q. 270 million to 293 million. Do you see that?
> A. I do.
> MR. RACHAL: Object to form on this whole line of questioning, James. You can keep doing it and -- seriously.
> Q. So Wynnchurch's firm value at the low end of its range was higher than the actual deal price, do you see that?
> A. I do.
> MR. RACHAL: James, are you going to continue to misstate the record you know?
> MR. BLOOM: Robert, no further speaking objections.
> MR. RACHAL: Mr. Bloom, you are not entitled as a counsel to misstate facts in the record and facts that you know of that were put before the Court. I'm sorry, Counsel, you just don't get to do that.
> MR. BLOOM: Mr. Rachal, that's what the subpoena says. I'm reading the document.

MR. RACHAL: You know because you pursued a subpoena against Wynnchurch what happened with Wynnchurch, sir.

MR. BLOOM: Robert, these speaking objections are totally inappropriate.

MR. RACHAL: What is inappropriate is when you know the facts in the record and facts that you pushed for and then to imply and misstate those facts, that is improper.

MR. BLOOM: I get 5 minutes off the record for the speaking objections.

MR. RACHAL: You don't get to state the time of the depo and count the time. That's not your role, sir. Move along.

MR. BLOOM: Robert, if you use any further words besides "object to form" or "object on the basis of attorney-client privilege," we're going to raise this with the Court. These interruptions are totally inappropriate.

MR. RACHAL: If you misstate purposely and intentionally facts that you know, I will make an objection on that.

MR. BLOOM: Mr. Rachal, I think the declaration submitted by Wynnchurch is inaccurate. Just because Wynnchurch submitted a declaration doesn't mean I have to believe it. It does not mean that fact is established with the Court, Mr. Rachal. Now, you keep your mouth shut. These interruptions are inappropriate and are over. And if you use one more -- one more word besides "object to form," I swear, I will take this before the Court. Now, this is totally appropriate --

MR. RACHAL: You can take whatever you want, Mr. Bloom. Please move on.

MR. BLOOM: 10 minutes off the time of the deposition.

MR. RACHAL: You don't get to decide the time of the deposition.

MR. BLOOM: No further speaking objections. No further speaking objections.

MR. RACHAL: I will object if you misstate the record, sir.

MR. BLOOM: How have I misstated the record?

MR. RACHAL: I told you, you have an affidavit in the record and you know what the affidavit says based on requests for the Court --

[Simultaneous crosstalk.]

MR. BLOOM: -- that affidavit, and it shows that Stout Risius put false information at best in its analysis of transaction fairness. Now, you tell me --

[Simultaneous crosstalk.]

MR. RACHAL: If that's what you want to try, that's fine, Mr. Bloom. Please go ahead. Please go ahead. Please go ahead.

MR. BLOOM: Thank you.

Q. Now, looking at the line that says firm value, cash free/debt free of 270 to 293 million, do you see that, Mr. Staruck?

A. I do. (Bloom Decl., Ex. D, at 151:16-155:11).

Q. Do you know whether the letter of intent that we looked at in Exhibit 32 was signed?

MR. RACHAL: Objection.

Q. I'm asking whether you know whether it was signed.

A. Whether I know that it is signed?

Q. Yeah. Do you know whether it was signed, without looking at it?

A. Without looking at it, how would I know?

Q. Because it was your duty as the trustee of the ESOP to know.

MR. RACHAL: Object to form.

Q. So the answer is you don't know?

A. What's the question, James?

Q. Do you know whether the letter of intent in Exhibit 32 was signed?

A. Am I allowed to look at it?

Q. My question is do you know whether it was signed?

MR. RACHAL: Object to form. I mean, we're getting to the point of harassment here.

Q. Look, if you need to look at it, that answers the question.

MR. RACHAL: As if somebody has a photographic memory.

MR. BLOOM: So, Robert, are you -- I'm just curious now because of the colloquy here that you want to start on the record, are you taking the position that the trustee has no obligation to understand the status of the sale-leaseback transaction?

MR. RACHAL: I am not. That's not your question. Your question is if he remembers something that happened 4, 4 and a half years ago without looking at a document to refresh his memory. That's my objection.

MR. BLOOM: A $25 million transaction for which Mr. Staruck was the trustee of the company that was going to get this 25 million bucks.

MR. RACHAL: It was a letter of intent, as you know. You also knew there were lease and tax payments that had to go out on the other side. It's a financing transaction. We can argue to the end of time about the transaction. If you want to ask Mr. Staruck questions about it, that's absolutely appropriate. My only objection is that you're trying to put a memory test to him about what he can remember from 4, 4 and a half years ago. That's unfair. Thank you. That's it.

MR. BLOOM: Okay. I appreciate your -- I appreciate it's your understanding that it's unfair that a trustee should have to be well informed about the --

MR. RACHAL: That's not what I said, Mr. Bloom, and you know that. The record will reflect what I said about a memory test. If you want to ask factual questions, you are certainly entitled to.

MR. BLOOM: Okay.

Q. So you don't know whether -- as you sit here now, you don't know whether the letter of intent was, in fact, signed at that time in 2016, do you?

A. Are you asking me to put myself back into what I knew in 2016?

Q. Yes.

A. I do not know. (Bloom Decl., Ex. D, at 243:7-246:10).

Q. And I think you testified earlier that you don't really recall what GreatBanc knew about the sale-leaseback at the time of the ESOP buyout; is that right?

MR. RACHAL: Object to form. Misstates prior testimony.

A. No. What I testified I think to is we didn't do an independent value analysis at GreatBanc.

Q. Right. And, Robert, your counsel, accused me of trying to subject you to a memory test regarding a topic that's set out in the 30(b)(6) notice. So I'm just going to go ahead and make an objection on the record that the witness was unprepared to testify about topics 14, 15, or 16 --

MR. RACHAL: I'm going to absolutely disagree with that. You're welcome to follow up with that. I will enjoy engaging with you on those points. So please do. I think the witness is well prepared.

MR. BLOOM: I'm sorry, Mr. Rachal, you interrupted me.

MR. RACHAL: Well, you made a comment about the preparation of the witness --

MR. BLOOM: All right. All right.

MR. RACHAL: Stop, James. When you do this on the record, when you say you're going to make objections and do this, I am entitled as counsel for the defendants to respond.

MR. BLOOM: But you're not entitled -- you're not entitled to interrupt because --

MR. RACHAL: You are not -- that's not a question. That is a comment you're making an objection. That is going to get a response from defense counsel, sir.

MR. BLOOM: All right. Before I was interrupted --

MR. RACHAL: You were not interrupted, sir. Quit misstating the record.

MR. BLOOM: I said I'm going to object that the witness was unprepared to testify about topics 14, 15, 16, 18, 19, and 20 and 21.

MR. RACHAL: You didn't even ask questions about certain of those topics, sir. And you're about to run out of time, so this is not going to save you time. Sorry about that.

MR. BLOOM: We're not counting the 30 minutes of colloquy that you've had on the record against my time.

MR. RACHAL: I'm sorry. You do not determine the time, sir. The court reporter and the videographer does again.

MR. BLOOM: Mr. Rachal, we spent nearly an hour waiting for you to download documents from Dropbox.

MR. RACHAL: We did not spend an hour doing it, didn't slow it up. But I cannot help what it takes with the technology. Again, if this is your objection, it's a weak tea. But you can do whatever you wish on that. If you wish to continue forward with the deposition with the little time you have left -- and, look, we're willing to be cooperative with you, James. But if you just want to sit up and make objections without a basis, I am going to object back. With that, back to you.

MR. BLOOM: Robert, we have good bases. The witness is unprepared to testify about the topics --

MR. RACHAL: You didn't even ask about certain of those topics, so how can you say the witness is unprepared. That is misstating the record, sir.

MR. BLOOM: You just interrupted me again.

MR. RACHAL: When you misstate the record on objections, not a question to the witness, I will respond on behalf of the defendants. That's not going to change. That's not interrupting.

Q. Let's take a look at Exhibit 127.

A. Okay.

Q. Look at the third paragraph on Exhibit 127. And it starts off with you saying: We know this is not a slam dunk. It's not a typical deal, but you have to consider the context of what the company is facing and by not accepting the offer, we need to consider the restraints put on the company. Do you see that?

A. I do.

Q. Do you recall making those statements at the meeting?

A. I don't recall making those statements at the meeting 4, 4 and a half years ago, no. Or 4 years ago. (Bloom Decl., Ex. D, 263:11-267:20).

There were also periods of questioning when GreatBanc's counsel would object after

almost every single question, consistently interrupting and delaying the deposition. For example,

> Q. Were you aware that the bids had come in on the sale-leaseback were in the $25 million range?
> MR. RACHAL: I'll object to form.
> A. I don't recall whether I was aware of that.
> Q. I'm having a hard time understanding this, Mr. Staruck. It seems like a significant amount of money, and it seems like you can't recall one way or the other what happened with this potential transaction.
> MR. RACHAL: Object to form.
> Q. Is it GreatBanc's ordinary practice to just ignore the value of a potential $25 million sale-leaseback that's closing at the same time as an ESOP sale?
> MR. RACHAL: Same objection to form.
> A. Was it closing at the same time?
> Q. Was it not?
> MR. RACHAL: Same objection.
> A. I don't know.
> Q. So you can't recall one way or the other about the value of the sale-leaseback that was performed before the ESOP sale?
> MR. RACHAL: Object to form. Analysis by who?
> MR. BLOOM: I'm sorry the question wasn't objectionable. I'll read it back.
> MR. RACHAL: It's still objectionable. You can read it back. Same objection.
> MR. BLOOM: No speaking objections.
> MR. RACHAL: It's not a speaking objection. I asked for a clarification. But that's fine. You don't have to clarify.
> Q. You can't recall one way or the other about the value of the sale-leaseback -- strike that. Can you recall one way or the other any analysis being performed about the value of the sale-leaseback that you were aware of prior to the ESOP sale in 2016?
> MR. RACHAL: Object to form.
> A. I can't recall.
> Q. Did you ever ask to see that analysis? Did you ever ask anyone if it had been done?
> A. I can't recall whether I asked or not. (Bloom Decl., Ex. D, 240:4-242:5).

> Q. And that's because there could be a conflict of interest if one participant tried to get an advantage at the expense of another participant?
> MR. RACHAL: Object to form.
> A. Well, the ESOP, the value of the deal was slightly higher than the value he was being asked to be paid out at. So I guess I don't understand the advantage you're suggesting he might have got.
> Q. That wasn't my question. My question is whether there could be a conflict of interest if one participant benefitted at the expense of another participant.
> MR. RACHAL: Object to form. The question answers itself.
> A. I just -- I guess I don't understand the question. I mean, how does one participant benefit at the expense of another participant?
> Q. You testified that the reason I don't want to get involved and know is because I don't want to be making decisions that would benefit or not one participant or another.

A. Right.

Q. So you're concerned about conflicts of interest?

MR. RACHAL: Object to form, please.

A. I'm concerned about not letting my relationship long-standing with Rick or any participant that I may have had, I got to know over the years, influence any decision that we might make at GreatBanc.

Q. Why would that be a problem --

MR. RACHAL: Object to form.

Q. -- for a decision you'd make at GreatBanc?

A. Okay. I'm sorry, Robert. You objected while he was finishing so I --

MR. RACHAL: Ask the question, I'll object, and we'll get a clean record. Go ahead, James.

Q. I said why would it be a problem to allow the relationship with Rick Joutras to influence a decision that might be made by GreatBanc?

MR. RACHAL: Object to form. (Bloom Decl, Ex. D, 260:21-262:18).

As a result of GreatBanc's counsel's unnecessary speaking objections and delays, Plaintiff lost significant deposition of GreatBanc's 30(b)(6) designee. Accordingly, as a result of these delays as well as the designee's inability to respond to questions, as detailed in Section I, *supra*, in the interest of full and fair discovery under Rules 26(b)(1) and (2) and Rule 30(d)(1), Plaintiff requests an additional three hours to continue the deposition of GreatBanc's 30(b)(6) designee.

## CONCLUSION

For the foregoing reasons, this Court should order that Defendant GreatBanc prepare a Rule 30(b)(6) witness on all deposition topics noticed by Plaintiff in Exhibit C to the Bloom Declaration, and that the deposition of GreatBanc's Rule 30(b)(6) witness may re-open and continue for an additional three hours (not including time for cross-examination).

Dated: February 4, 2021

Respectfully Submitted,

By:  */s/ James A. Bloom*
Todd Schneider (*pro hac vice*)
James A. Bloom (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Ste. 1400

Emeryville, California 94608
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com
kbates@schneiderwallace.com

Michael M. Mulder
Elena N. Liveris
LAW OFFICES OF MICHAEL M.
MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone: (312) 263-0272
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on February 4, 2021 a true and correct copy of the foregoing document was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.


*/s/ James A. Bloom*
James A. Bloom